**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |  |
|---|---|---|
| PROJECTS MANAGEMENT COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:11-CV-1345 TSE/IDD |
| v. | ) ) | |
| DYNCORP INTERNATIONAL LLC, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT DYNCORP INTERNATIONAL LLC'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL
PRODUCTION OF SMITH PACHTER MCWHORTER PLC DOCUMENTS**

**I.    INTRODUCTION**

This action arises in large part out of an assertion by Plaintiff Projects Management Company ("PMC") that DynCorp International LLC ("DynCorp") breached a subcontract[1] with PMC, and committed various torts, when it followed the instruction given by PMC's Managing Director (Hussein Fawaz) to stop making invoice payments to a bank account in Kuwait and to instead pay them to a bank account in Lebanon. Am. Compl. ¶¶ 18, 25-28, 32-33. PMC alleges that Fawaz lacked authority to direct changes in PMC's payment instructions. Am. Compl. ¶ 9. PMC also alleges that Fawaz kept the payments made to the Lebanon account for himself, with PMC not receiving any of the funds paid to the Lebanon account either directly or indirectly. Am. Compl. ¶¶ 9, 18. DynCorp seeks an order compelling PMC to produce all documents

---

[1] The subcontract at issue is subcontract 08-SC-LES-CIVPOL-PMC-001, which will be referred to in this memorandum as "the Subcontract."

relating to the purported representation of PMC by the law firm of Smith Pachter McWhorter PLC ("Smith Pachter") in connection with the termination of the Subcontract.[2] PMC has not produced evidence that an attorney-client relationship was formed between PMC and Smith Pachter. More to the point, PMC's litigation position *necessarily* concedes that the crime-fraud exception precludes invocation of the attorney-client privilege with respect to the Smith Pachter documents.

When DynCorp terminated the Subcontract in December 2009, Smith Pachter purported to represent PMC, first in attempting to reverse DynCorp's decision to terminate the Subcontract and then to pursue an administrative claim for reimbursable expenses in connection with closing out the Subcontract. Smith Pachter was engaged and instructed by Fawaz, who PMC now alleges was stealing all of the funds being paid by DynCorp under the Subcontract. Am. Compl. ¶ 18. PMC has not produced any documents establishing that Fawaz had authority to engage Smith Pachter to represent PMC's interests in December 2009. Given PMC's current litigation position that Fawaz lacked the authority to direct changes to the Subcontract, his authority to engage and direct a law firm to pursue and compromise claims under the Subcontract is at best questionable.

In any event, *even if* Fawaz initially had authority to retain Smith Pachter, the Smith Pachter documents are not privileged because the crime-fraud exception applies, and PMC is in no position to argue to the contrary. PMC alleges that Fawaz was stealing 100% of the funds being paid by DynCorp under the Subcontract. Am. Compl. ¶ 18. If PMC's position is to be

---

[2] Smith Pachter has represented that it provided a copy of all of the files from its purported representation of PMC to PMC's current counsel in mid-2011. O'Connor Decl., Ex. 1. Based on this representation, DynCorp is pursuing production of the Smith Pachter documents from PMC, subject to DynCorp's right to pursue production directly from Smith Pachter if its representation turns out to be incorrect.

credited, then Smith Pachter's representation in seeking to prevent termination of the Subcontract was designed, unbeknownst to Smith Pachter, to perpetuate an ongoing crime and fraud, to keep DynCorp funds pouring into the Lebanon account so that Fawaz could keep stealing them. Moreover, a few days into Smith Pachter's representation, its focus shifted from trying to prevent termination to submitting a claim to DynCorp. As detailed below, that claim is false and fraudulent in several important respects. Indeed, the claim is signed in June 2010 by Fawaz in his stated capacity as PMC's Managing Director, a representation of authority that PMC now says is categorically false. O'Connor Decl., Ex. 2 at 7.

PMC presumably agrees that the claim submitted by Smith Pachter was, unbeknownst to Smith Pachter, unauthorized, false, and fraudulent. Smith Pachter believed it was representing PMC's interests, as Fawaz held himself out, both to Smith Pachter and to DynCorp, as authorized to act for PMC as its Managing Director. PMC's litigation position, however, is that this was a lie. If PMC's position is to be credited, the only permissible conclusion is that Fawaz was using Smith Pachter, unbeknownst to Smith Pachter, to pursue Fawaz's interest in continuing his diversion of assets from PMC, and misleading DynCorp in connection with the claim Smith Pachter submitted. The crime-fraud exception does not permit the shielding of communications with counsel when counsel is being used to perpetrate a fraud, and PMC thus has no basis for withholding any portion of the Smith Pachter documents.

## II. BACKGROUND

### A. DynCorp's Service of a Subpoena on Smith Pachter

DynCorp terminated the Subcontract with PMC in December 2009. Beginning in December 2009, and continuing to mid-2011, Smith Pachter purported to represent PMC with respect to claims by PMC against DynCorp in connection with termination of the Subcontract.

3

Indeed, in June 2010 Smith Pachter submitted a formal claim to DynCorp, supposedly on PMC's behalf, that was signed by Fawaz. Given PMC's position about Fawaz's supposed lack of authority to act for PMC, DynCorp served a Rule 45 document subpoena on Smith Pachter. O'Connor Decl., Ex. 3.

DynCorp now knows that Smith Pachter turned over a complete copy of its files to PMC's current counsel in *mid-2011*. Nevertheless, PMC did not produce any Smith Pachter documents with its February 3, 2012 response to DynCorp's first set of document requests. Rather, after DynCorp served its Rule 45 subpoena on Smith Pachter, PMC for the first time produced documents from its cache of Smith Pachter documents on February 24, 2012, one business day before Smith Pachter's counsel would disclose in Rule 45 objections that PMC has had a complete copy of the documents since the summer of 2011. O'Connor Decl., Ex. 1.[3] In meeting and conferring with PMC's counsel on the Smith Pachter documents, PMC's counsel advised that PMC would be withholding the following Smith Pachter documents on the basis of privilege: (1) communications between Smith Pachter and Fawaz from December 2009, but not from 2010; and (2) communications between Smith Pachter and persons at PMC other than Fawaz. Notably, PMC has not produced an engagement letter relating to Smith Pachter's purported representation. The PMC production also contains only one Smith Pachter invoice for $2,165.30, though Smith Pachter advised DynCorp that PMC incurred $34,601 in Smith Pachter legal fees in connection with the Subcontract. O'Connor Decl., Ex. 4 at DYN0007798.

---

[3] Most or all of the Smith Pachter documents are responsive to DynCorp's first set of document requests. For example, Document Request No. 17 seeks production of "all Documents Relating to DynCorp's termination of the Subcontract . . . ." O'Connor Decl., Ex. 5 at 9.

4

### B.     Smith Pachter's Purported Representation of PMC

Among the most important issues in this case is the authority of Hussein Fawaz to act for PMC. Fawaz was PMC's Managing Director and signed the Subcontract on PMC's behalf in July 2008. Am. Compl., Ex. A. In late 2008, Fawaz, again as PMC's Managing Director, sent DynCorp a letter on PMC letterhead directing that DynCorp stop making invoice payments to a bank account in Kuwait that was listed in the Subcontract and to make future payments to a bank account in Lebanon. O'Connor Decl., Ex. 6. Fawaz told Smith Pachter that this change in payment instructions was necessary because a financial crisis at PMC's bank (the Gulf Bank of Kuwait) imperiled PMC's funds, and that the solution was to change the bank account where invoices were paid. O'Connor Decl., Ex. 7. DynCorp complied with this instruction for more than a year without complaint from PMC. By PMC's own admission, it never advised DynCorp that Hussein Fawaz lacked authority to act for PMC until August 2010, long after the Subcontract had been terminated. O'Connor Decl., Ex. 2 at 8. In this lawsuit, however, PMC seeks to require DynCorp to pay millions of dollars in PMC invoices a second time based on PMC's argument that Fawaz lacked authority as PMC's Managing Director to bind PMC to a change in payment instructions. Am. Compl. ¶ 9.

DynCorp terminated the Subcontract in December 2009. Although PMC has not produced a copy of a Smith Pachter engagement letter, DynCorp understands that Fawaz purported to engage Smith Pachter on PMC's behalf in December 2009 to represent PMC's interests in connection with the termination. Smith Pachter initially urged DynCorp not to terminate the Subcontract. O'Connor Decl., Ex. 8. Given PMC's allegation that Fawaz was stealing all of the funds being paid on the Subcontract, a reversal of the termination would have allowed Fawaz to continue what PMC alleges was a massive fraud, and PMC would not have

5

received any funds from continued work under the Subcontract. Am. Compl. ¶ 18. Within a few days of Smith Pachter's purported engagement, however, DynCorp reiterated its intent to terminate the Subcontract, though DynCorp changed the basis for its termination from default to convenience.

Smith Pachter's principal work in connection with the Subcontract appears to involve preparation of a termination proposal that, if PMC's position in this litigation is to be believed, is entirely fraudulent.[4] Importantly, PMC has asserted in this action, under oath, that Fawaz ceased to be PMC's Managing Director—indeed, ceased to have *any* position in PMC—in December 2009. O'Connor Decl., Ex. 2 at 7, 8. PMC has not produced a contemporaneous document purporting to terminate Fawaz as PMC's Managing Director, but that is PMC's sworn position in this action. In February and April 2010, however, Fawaz held himself out to Smith Pachter as PMC's Managing Director and as having authority to resolve the termination claim on PMC's behalf. O'Connor Decl., Ex. 7, 9. If PMC's litigation position, that Fawaz had no role in PMC after December 2009, is to be believed, then Fawaz was misrepresenting his authority to act for PMC to Smith Pachter, and Smith Pachter was taking its instructions from someone with no connection to PMC.

Indeed, Smith Pachter submitted what purported to be a PMC settlement proposal to DynCorp on June 23, 2010, some six months after—according to PMC's sworn interrogatory response—Fawaz ceased to have *any* position in PMC. Given PMC's litigation position, PMC *necessarily* must contend that the settlement proposal submitted by Smith Pachter is false and fraudulent in the following ways:

---

[4] To be clear, DynCorp does not assert that Smith Pachter *knowingly* submitted a false or fraudulent termination proposal to DynCorp.

- The settlement proposal is purportedly submitted on behalf of PMC, but it is dated June 23, 2010 and signed by Fawaz in his stated capacity as Managing Director. O'Connor Decl., Ex. 4 at DYN0007783, 7785, 7789. PMC contends that Fawaz had no position whatsoever in PMC as of June 2010, and certainly does not contend that Fawaz had authority to be attempting to settle a claim on PMC's behalf in June 2010.

- The settlement proposal seeks payment by DynCorp for "standby salaries for idle PMC employees" in January and February 2010. O'Connor Decl., Ex. 4 at DYN0007796. Fawaz is listed as a PMC employee who served as Managing Director of PMC in January and February 2010, and who was paid a salary during that period of $21,000. *Id.* Given PMC's litigation position, it necessarily contends that a demand for reimbursement of PMC for Fawaz's salary in January and February 2010 when Fawaz had no position at PMC is false and fraudulent.

- The settlement proposal seeks payment of $789,099.50 in PMC invoices. O'Connor Decl., Ex. 4 at DYN0007793-94. These invoices, however, are all dated in 2010 (after PMC asserts that Fawaz had no role in PMC), are nonetheless signed by Fawaz as the "PMC Approval Signature," and all direct payment to the Lebanon account that PMC now asserts was not a valid account for payment of PMC invoices. O'Connor Decl., Ex. 10.

## III. ANALYSIS

### A. Neither PMC Nor Smith Pachter May Withhold the Smith Pachter Documents on the Basis of Privilege Because PMC Has Not Met Its Burden of Showing that an Attorney-Client Relationship Was Formed

The attorney-client privilege exists when: (1) an attorney-client relationship has been established; (2) the communication relates to a fact that the attorney learned from the client, outside the presence of others, for the purposes of obtaining a legal opinion or legal services; and (3) the privilege has been claimed and not waived. *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998). The burden of establishing the existence of the privilege is on the proponent of the privilege. *Id.*; *see also United States v. Lentz*, 419 F. Supp. 2d 820, 827 (E.D. Va. 2005) ("Specifically, the proponent must establish 'not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived.'" (quoting *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003)). Because the

7

attorney-client privilege impedes the truth-seeking function of courts, it is "strictly confined within the narrowest possible limits." *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984).

PMC cannot meet its burden of showing that it had established an attorney-client relationship with Smith Pachter. In order to avoid the inconvenient fact that DynCorp made invoice payments to a Lebanon account because PMC's own Managing Director so directed, PMC's litigation position is that while Fawaz had authority to bind PMC to the Subcontract, he thereafter had no authority to bind PMC on other matters relating to the Subcontract. Am. Compl. ¶ 9. PMC has not produced any documents indicating that Fawaz had authority to engage counsel to resolve claims against DynCorp under the Subcontract. Regardless, as discussed below, even if PMC could meet this burden, the privilege cannot apply to the Smith Pachter documents because, under PMC's own version of the facts, Smith Pachter's representation was being used to perpetrate a fraud.

### B. The Crime-Fraud Exception Bars an Assertion of Privilege with Respect to the Smith Pachter Documents

The crime-fraud exception excludes from the attorney-client privilege communications where a client sought the advice of counsel to commit or further a crime or fraud, where the privileged materials are closely related to the client's existing or future fraudulent scheme. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999). The crime-fraud exception also applies to a client's use of legal services to commit tortious conduct. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982); *Flexible Benefits Council v. Feltman*, No. 1:08-cv-371, 2008 WL 4572511, at *4 (E.D. Va. Oct. 8, 2008). "It is immaterial whether the attorney knew that the client was seeking his advice for illegal purposes or whether the attorney joined in . . . the illegal activity." *Lentz*, 419 F. Supp. 2d at 830. "It is similarly immaterial whether the [party claiming

8

privilege] actually succeeded in completing the crime or fraud in question; rather, solicitation alone triggers the exception." *Id.* (quoting *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1039 (2d Cir. 1984)).

The party asserting the crime-fraud exception need only make out a *prima facie* case that it applies. *Chaudhry*, 174 F.3d at 403-04. "In satisfying this *prima facie* standard, proof either by a preponderance or beyond a reasonable doubt of the crime or fraud is not required. *In re Grand Jury Proceeding s*, 401 F.3d 247, 251 (4th Cir. 2005). Rather, all that is required is "enough evidence to support a verdict in favor of the party making the claim." *Feltman*, 2008 WL 4572511, at *5 (quoting *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1220 (4th Cir. 1976).

Here, PMC necessarily contends that Smith Pachter was engaged to provide representation in furtherance of a crime or fraud. Smith Pachter originally sought to reverse termination of the Subcontract. O'Connor Decl., Ex. 8. According to PMC's Amended Complaint, however, the Subcontract was being used to steal funds from PMC, as PMC alleges that Fawaz was stealing 100% of the funds being paid by DynCorp. Am. Compl. ¶ 18. Thus, PMC's position is that continuation of the Subcontract would have perpetuated Fawaz's fraud, as he would have continued to receive the funds being paid by DynCorp.

Moreover, once Smith Pachter's efforts to stave off termination failed, Smith Pachter's principal engagement was to seek reimbursable costs from DynCorp arising out of termination of the Subcontract. That representation culminated in Smith Pachter submitting a settlement proposal to DynCorp in <u>June 2010</u> that purportedly was signed by Hussein Fawaz as PMC's Managing Director. Given PMC's litigation position that Fawaz had no position in PMC after December 2009 (O'Connor Decl., Ex. 2 at 7, 8), PMC necessarily contends that Smith Pachter's

submission of a settlement proposal in June 2010 that was signed by Fawaz and represented that Fawaz was PMC's Managing Director is a fraudulent submission. Similarly, the settlement proposal submitted by Smith Pachter seeks to collect from DynCorp for salary payments by PMC to Fawaz in January and February 2010 (O'Connor Decl., Ex. 4 at DYN0007796), a time period when PMC now contends Fawaz had no role in PMC whatsoever. Finally, the settlement proposal submitted by Smith Pachter demands payment of PMC invoices signed by Fawaz in 2010 (when PMC now contends Fawaz had no position with PMC) and which direct payment of the invoices to the bank account in Lebanon. O'Connor Decl., Ex. 10. Again, if PMC contends that Fawaz had no position with PMC in 2010, the invoices signed by Fawaz in 2010, and which form most of the settlement demand in the Smith Pachter submission, are facially false and fraudulent, particularly given that they reflect Fawaz as the "PMC Approval Signature."

PMC cannot assert that Fawaz was directing Smith Pachter to submit fraudulent settlement proposals to DynCorp, and at the same time claim that the Smith Pachter materials are shielded from disclosure by the attorney-client privilege. Given PMC's representations concerning Fawaz's alleged theft of funds being paid under the Subcontract, and the alleged termination of Fawaz's status as PMC's Managing Director in December 2009, DynCorp has provided more than enough evidence to make out a *prima facie* case that Smith Pachter was retained to provide legal services designed to perpetrate a fraud against both PMC and DynCorp.

### C. Smith Pachter's Engagement Letter(s) and Bills Are Not, In Any Event, Privileged

PMC's production of Smith Pachter's documents did not include the engagement letter executed by Smith Pachter, nor did it include any of Smith Pachter's bills other than a single bill for $2,165.30. It is black-letter law, however, that engagement letters and legal bills ordinarily are not privileged. *United States v. Under Seal*, 774 F.2d 624, 628 (4th Cir. 1985) ("As appellant

concedes, the attorney-client privilege normally does not extend to the payment of attorney's fees and expenses."); *see also In re Grand Jury Matter*, 926 F.2d 348, 352 (4th Cir. 1991). Indeed, PMC's production of one legal bill (albeit for only six percent of the amount claimed in the settlement proposal submitted by Smith Pachter) suggests that PMC does not seriously contend that Smith Pachter's bills are privileged. Matters relating to engagement and billing are important in this action because PMC is seeking to paint a picture of Fawaz having no authority to act for PMC, while it appears likely that Fawaz was the principal person directing the Smith Pachter claim preparation and submission. Moreover, to the extent that others at PMC were involved in that process, it undermines PMC's argument that Fawaz was a rogue performing unauthorized actions. Finally, PMC has alleged that it received no benefit, directly or indirectly, from funds deposited into the Lebanon account, but it appears from the materials produced in discovery that Smith Pachter was paid, at least for the one bill produced, through a wire from that Lebanon account. O'Connor Decl., Ex. 11.

**IV. CONCLUSION**

For the foregoing reasons, the Court should order PMC to produce all documents relating to Smith Pachter's purported representation of PMC.

Respectfully submitted,

*/s/ J. William Koegel, Jr.*
_____
J. William Koegel, Jr.
Virginia Bar No. 38243
John F. O'Connor
Attorneys for Defendant DynCorp
   International, LLC
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000 – telephone

11

                                              (202) 429-3902 – facsimile
                                              wkoegel@steptoe.com
                                              joconnor@steptoe.com

March 2, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of March, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>David M. Morris
>MORGAN, LEWIS & BOCKIUS LLP
>1111 Pennsylvania Avenue, N.W.
>Washington, D.C. 20004
>
>Counsel for Plaintiff

>/s/   J. William Koegel, Jr.
>_____
>J. William Koegel, Jr.
>Virginia Bar No. 38243
>Attorney for Defendant DynCorp
>    International, LLC
>STEPTOE & JOHNSON LLP
>1330 Connecticut Avenue, N.W.
>Washington, D.C. 20036
>(202) 429-3000 – telephone
>(202) 429-3902 – facsimile
>wkoegel@steptoe.com